IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO HERNANDEZ,<br><br>    Plaintiff,<br><br>v.<br><br>SUTTER WEST CAPITAL et al.,<br><br>    Defendants.<br>_____/ | No. C 09-3658 CRB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS** |

    Plaintiff Antonio Hernandez brings this action seeking rescission of a series of refinancing loans. Hernandez alleges various wrongdoings on the part of all parties involved in the transactions. Ultimately, Hernandez seeks a court order re-instituting his original home loan. This relief is almost certainly unobtainable. Hernandez does not allege any cause of action against that original lender, nor does he apparently believe that lender did anything wrong. Indeed, at the hearing Plantiff's counsel informed the Court that this lender is no longer doing business. Therefore there appear to be no grounds on which to order – and in fact no bank to comply with such an order – that party to make a new loan.

    However, Hernandez has succeeded in stating legal claims against some defendants that would support monetary relief and perhaps some more limited form of equitable relief. Those claims therefore cannot be dismissed. Against others, however, he fails to allege sufficient facts to state a cause of action.

**BACKGROUND**

As this case comes before this Court on a motion to dismiss, the following recitation of facts is taken entirely from the allegations in the Complaint.

Plaintiff Hernandez "cannot read in English, and has only basic limited capacity in spoken English. However, he speaks Spanish fluently and can read in that language." Compl. ¶ 26. Plaintiff purchased the property in question on June 25, 2004, "financed by a loan obtained through Saxon Mortgage and funded by First Franklin Financial Corporation." Id. ¶ 27. The principal of the loan was $585,000, with a variable interest rate beginning at 6.25%. Id.

Later, on the advice of friends, Plaintiff consulted with Sutter West Capital Mortgage to determine if it would be wise to refinance. Id. ¶ 28. "At all times, the Sutter West Defendants, through the Spanish-speaking agents and employees among these Defendants, communicated with Plaintiff in Spanish." Id. Sutter West told Plaintiff that they could obtain a loan for him with better terms, and "Plaintiff retained the Sutter West Defendants for this purpose." Id. During the process of refinancing, however, "[t]he Sutter West Defendants did not translate any of the material terms, or any terms, of the new loans into English for Plaintiff before, during, or after, execution of the documents effectuating the refinance. Plaintiff did not sign or receive any documentation in Spanish related to the loans he obtained through the Sutter West Defendants." Id. ¶ 29.

Plaintiff succeeded in refinancing his loan on June 22, 2006, obtaining two loans financed by Chase. Id. ¶ 30. The first loan had a principle of $572,000 with an initial interest rate of 6.5% and a 12.5% ceiling. Id. ¶ 31. Plaintiff also received an additional loan of $28,000 with a fixed interest rate of 7.5%. Id. ¶ 32. According to the Complaint, "the Sutter West Defendants did not advice [him] of the principle sums on the Sutter West Loans, nor that his loan liability was now higher than on the Original Loan," nor did they inform him that his new monthly payments would be "nearly $300 a month" higher. Id. ¶ 34. Further, Plaintiff alleges that the Sutter West Defendants did not inform him that if he waited

2

three days to refinance, he would have avoided a $15,000 prepayment penalty on the original loan. Id. ¶ 35.

Plaintiff sought to refinance against in 2007 with First Security Financial Group. Id. ¶ 40. Again, he sought more favorable terms, and also sought to combine his two loans into one. Id. He alleges that the First Security Defendants informed him that they would consolidate the loans into one single loan, and that the terms would be better than those of the Sutter West loan. Again, he alleges that the First Security Defendants failed to provide him with a Spanish translation of the loan documents, which ultimately failed both to provide better terms and to consolidate the loans.

The loans he was ultimately given were financed by American Mortgage Network. The first loan had a principle of $541,600 with an initial variable interest rate of 6.35% and a cap of 12.375%. Id. ¶ 43. The principle for the second loan was $78,400 with a fixed interest rate of 8.75%. Id. ¶ 44. "The secured principle of the two loans totaled $620,000, following close of escrow. Thus, following three years of timely, monthly mortgage payments, Plaintiff's debt increased by approximately $35,000 over the Original Loan." Id. Moreover, "the First Security Defendants did not inform Plaintiff that his monthly mortgage payments would go up by nearly $190 a month." Id. ¶ 46. "It was not until Plaintiff received a telephone call from the lender indicating his payments on First Security Loan #2 were overdue that he became aware of the existence of that loan." Id. ¶ 47.

Plaintiff brings a series of actions against the moving defendants. These defendants seek to dismiss the following claims: (1) declaratory relief; (2) violation of the California Translation Act, Civil Code § 1632; (3) violation of the Consumer Legal Remedies Act, (4) violation of Business & Professions Code § 17500; (5) violation of Business & Professions Code § 17200; (6) violation of the Unruh Civil Rights Act; (7) Breach of Fiduciary Duty; (8) Fraud; (9) violation of the Fair Housing Act

**Discussion**

1.   Legal Standard

3

Under Rule 12(b)(6), a party may move to dismiss a cause of action which fails to state a claim upon which relief can be granted. On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Wyler-Summit Partnership v. Turner Broadcasting System, Inc., 135 F.3d 658, 661 (9th Cir. 1998). To survive a Rule 12(b)(6) motion to dismiss, the complaint must state a claim to relief that is "plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A claim has "facial plausibility" when the pleaded factual allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Despite the requirement that factual allegations in the complaint be taken as true, a legal conclusion "couched as a factual allegation" need not be accepted. Id.

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleadings was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect "without contradicting any of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted. Id. at 296-97.

2.  Violation of California Translation Act § 1632

The First Security Defendants, now known as Residential Mortgage Capital, move to dismiss Plaintiff's action under California Civil Code § 1632. They argue that mortgage brokers, as opposed to actual lenders, are not liable under the statute. Further they argue that the action is time barred. Finally, they argue that the statute does not provide for the relief Plaintiff seeks, and that Plaintiff has not alleged that he is capable of satisfying his obligations under an order of rescission.

The statute at issue provides that "[a]ny person engaged in a trade or business who negotiates primarily in Spanish . . . in the course of entering into any of the following, shall

4

deliver to the other party to the contract or agreement . . . a translation of the contract or agreement in the language in which the contract or agreement was negotiated." Cal. Civ. Code § 1632.

First Security argues that the contract in question was between Plaintiff and the bank that funded the loan, not between Plaintiff and his mortgage broker. Indeed, they have a facially plausible argument based on the plain reading of the statute. The statute directs "any person . . . who negotiates primarily in Spanish . . . <u>in the course of entering into [a real estate loan]</u> . . . shall deliver to <u>the other party to the contract</u> . . . a translation." Cal. Civil Code § 1632. This language taken in isolation suggests that the statute reaches only a person who enters into the contract herself. For example, the statute provides that it applies to a negotiator "in the course of entering into a [real estate loan]." This suggests that the negotiator herself must enter into the loan. Such an interpretation is further supported by the later provision that the negotiator "deliver to <u>the other party</u> to the contract." This language presumes that the negotiator is also a party to the contract.

However, as Plaintiff's counsel pointed out at the hearing, subsection (b)(4) provides that § 1632 also applies to a "loan . . . where the loan or extension of credit is subject to the provisions of Article 7 (commencing with Section 10240)." Article Seven, in turn, applies exclusively to real estate brokers. In other words, the statute clearly provides that it applies to loans obtained with a real estate broker. Therefore, despite the fact that the language of § 1632(b) seems incompatible with a loan between two parties that is brokered by a third party, § 1632(b)(4) nonetheless requires that the act be applied in such a situation.

Next, the First Security Defendants argue that the cause of action is time barred under California Code of Civil Procedure § 340(a). However, this is not the applicable statute of limitations. Section 340(a) provides that "[a]n action upon a statute for a penalty or forfeiture" must be initiated within a year. However, this is not an action for a penalty or a forfeiture, so § 340(a) does not apply.

Finally, First Security argues that because Plaintiff has not offered to pay back the money he received via the loan transaction, he has not stated a claim for rescission. <u>See</u>

5

1  Yamamoto v. Bank of New York, 329 F.3d 1167 (9th Cir. 2003).  Indeed, at the hearing
2  Plaintiff's attorney did not suggest that Plaintiff is indeed capable of satisfying his
3  obligations under a remedy of rescission.  Therefore, this claim must be dismissed without
4  prejudice.  Such a claim will only be permitted to go forward if Plaintiff alleges facts
5  supporting the conclusion that he is capable of paying back to the bank the sum it lent to him,
6  less whatever he has already paid.[1]

7  3.    Violation of Consumer Remedies Act, California Civil Code § 1750

8  Plaintiff asserts a cause of action under this section against the First Security
9  Defendants.  Those defendants argue that "the CLRA does not apply to the granting of credit
10  because it does not involve the sale or lease of goods or services as required under the
11  CLRA."  Moreover, they argue that Plaintiff fails to plead that he served written notice on
12  Defendants as required by Civil Code § 1782.

13  Various courts in this district have concluded that the CLRA does indeed apply to a
14  real estate transaction such as the one at issue in this case.  For example, as in this case,
15  Hernandez v. Hilltop, 622 F. Supp. 2d 842 (N.D. Cal. 2007), "deal[t] not just with the
16  mortgage loan itself, but also with the services involved in developing, securing and
17  maintaining plaintiffs' loan.  In fact, in an effort to create an appropriate refinancing package,
18  plaintiffs met with defendants' agent three times before finally agreeing on a payment plan
19  that plaintiffs and defendants found acceptable."  Id. at 851.  Judge Illston therefore
20  concluded that the CLRA does indeed apply to the "services" involved in "creat[ing] an
21  appropriate refinancing package."  Judge Illston's analysis is persuasive, and this Court
22  rejects Defendant's arguments to the contrary.

23  Next, Defendant First Security argues that Plaintiff fails to plead that he satisfied a
24  relevant notification provision in California law.  California Civil Code § 1782 provides that
25  "[t]hirty days or more prior to the commencement of an action for damages pursuant to this

---

[1] While Plaintiff is correct that § 1632 contemplates some restitutionary remedies in certain contexts, they are only ancillary to the rescissionary remedy.  In other words, restitution cannot be ordered in the absence of a rescission of the contract.  See Cal. Civil Code § 1632(k) ("When the contract . . . is rescinded pursuant to this subdivision, the consumer shall make restitution to and have restitution made by the person with whom he or she made the contract . . . .") (emphasis added).

6

title, the consumer shall" notify Defendants of the allegedly forbidden practice and "[d]emand that the person correct . . . the . . . services alleged to be in violation of Section 1770" (emphasis added).  As Plaintiff pointed out at the hearing, this notice provision applies only to actions for damages, and the complaint contains no such action.  Instead, Plaintiff only seeks injunctive relief.  Therefore, the motion to dismiss this action is DENIED.

4.    False Advertising Under § 17500

Defendant alleges that Defendant First Security is liable for false advertising under California Business and Professions § 17500.  First Security moves to dismiss.

Plaintiff's complaint alleges that the First Security Defendants "have violated Business and Professions Code § 17500 by making, or causing to be made, untrue or misleading statements with the intent to induce members of the public to purchase Defendants' services and/or enter into agreements through which Defendants would obtain a monetary benefit."  Compl. ¶ 105.  However, when it comes to listing specific untrue or misleading statements, Plaintiff only lists statements that were made directly to Plaintiff.

Defendants argue that the complaint fails to allege a "public" statement that could constitute advertising.  Section 17500 provides that it is unlawful "to make or disseminate or cause to be made or disseminated before the public in this state . . . [a statement] which is untrue or misleading."  The Complaint, however, fails to allege that any particular statement was made to anyone other than Plaintiff.  While the Complaint uses the word "public" in a general fashion, the only facts alleged concern statements made to Plaintiff alone.

Plaintiff contends that statements made to Plaintiff can still constitute false advertising as defined by § 17500, and cites for support to Chern v. Bank of America, 15 Cal. 3d 866 (1976).  In Chern, however, the Plaintiff did not isolate his allegations to comments made only to one individual.  On the contrary, the plaintiff in Chern alleged that the defendant engaged in "the practice of computing interest quoted as a 'per annum' rate on the basis of a 360-day year," and the Court agreed that this practice is likely to deceive the public.  Id. at 876.  Plaintiff in this case, however, does not allege a practice.  Instead, he alleges that he was told certain things about the loans he was in the process of securing, and that these

7

things were false. There is no allegation that such statements were made to any other individual. We agree with defendant that to permit a False Advertising action to stand in this circumstance is to read the word "public" out of the statute.

Moreover, other courts in this district have held that actions alleging false advertising under § 17500 are subject to the heightened pleading standard of Rule 9. See, e.g., Janda v. T-Mobile, USA, Inc., 2009 U.S. Dist. LEXIS 24395 (N.D. Cal. Mar. 13, 2009). Plaintiff's complaint against First Security clearly fails to meet this heightened standard.

5.    Unruh Civil Rights Act

Plaintiff alleges that First Security, American Mortgage Network, and JPMorgan Chase are liable under the Unruh Civil Rights Act. "The Unruh Civil Rights Act, guarantees to all persons within the jurisdiction of California, no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition, the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Koebke v. Bernardo Heights Country Club, 116 Cal. App. 4th 791, 807 (2004). The Complaint alleges that "Defendants denied full and equal advantages, privileges, or services to Plaintiff, or aided or incited a denial of equal advantages, privileges or services to Plaintiff." Compl. ¶ 114. Moreover, the Complaint alleges that "[t]he motivating reason for Defendants' conduct was their perception of Plaintiff's race, national origin, and native language." Id. ¶ 115.

Defendants all make similar arguments in support of their motions to dismiss this claim. Primarily, they argue that Plaintiff fails to allege any facts in support of the conclusion that the Defendants were motivated by Plaintiff's race. As for American Mortgage and JPMorgan Chase, the Complaint fails even to allege how these defendants becamse aware of Plaintiff's race. These banks funded the loan, but the Complaint does not allege that any representative of either of these defendants met Plaintiff, nor that they were informed of his race. The banks therefore argue that "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." Ass. Gen. Contractors of Am. v. Metro. Water Dist. of S. Cal., 159 F.3d 1178, 1181 (9th Cir. 1998).

8

Indeed, the Complaint contains hardly any factual allegations regarding these banks, just boilerplate legal conclusions.

Plaintiff, in opposition to the banks' motion, goes so far as to claim that the Complaint need not allege that the banks acted with discriminatory intent. While Plaintiff may be correct that notice pleading in federal court requires only a short and plain statement, that statement must contain facts supporting a cause of action. Supreme Court law is clear that conclusory allegations that merely outline the elements of a cause of action are insufficient to state a claim. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). As Plaintiff concedes in her opposition papers, an action under the Unruh Act requires that a defendant's conduct be motivated by its perception of the plaintiff's national origin. However, the Complaint does not allege any fact support this conclusion as to the banks. Plaintiff's claims under the Unruh Act against the defendant banks, American Mortgage Network and JPMorgan Chase, are therefore dismissed with leave to amend.

As for Plaintiff's claim against First Financial, Plaintiff makes a series of factual allegations as to that defendant's conduct. For instance, Plaintiff alleges that First Financial was aware of his race, and that First Financial misled him as to the terms of the loan he would receive. Plaintiff asks us to infer from these factual allegations that First Financial engaged in this conduct out of racial animosity. While this is barely enough, even under generous notice pleading standards, it is still enough. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While Plaintiff does himself no favors by lumping all defendants into the same claim for violation of the Unruh Act without differentiating between their various roles, the Complaint as a whole still alleges sufficient facts to permit the inference that the First Security defendants acted with discriminatory motivation. First Security's motion to dismiss is therefore DENIED.

6.  Fair Housing Act

9

Plaintiff alleges that "Defendants negotiated loans, or provided loans, to Plaintiff, secured by the Property, on grossly unfavorable terms, as alleged herein; or Defendants are vicariously liable for such acts on the part of their agents and/or employees." Comp. ¶ 160. The FHA makes it unlawful "for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 42 U.S.C. § 3605.

First, as to Defendants American Mortgage Network and JPMorgan Chase, as with Plaintiff's Unruh Act claims, Plaintiff fails to provide any facts regarding how these parties discriminated against Plaintiff. Those parties were not involved in the negotiations to obtain the loan, those parties did not deceive the Plaintiff as to the loan he was receiving, there is no allegation that these parties were aware of Plaintiff's national origin, and Plaintiff has not alleged that any agency relationship exists between the brokers and the banks. Therefore, Plaintiff's claims against American Mortgage Network and JPMorgan Chase are dismissed with leave to amend.

As to the First Security defendants, however, Plaintiff has alleged further facts. Plaintiff has alleged that these defendants were aware of his national origin, misled him concerning the loan he was signing for, and imposed grossly unfair terms on him. Therefore, this Court concludes that Plaintiff has made sufficient factual allegations to state a claim for violation of the FHA as to the First Security Defendants.

However, these defendants also argue that Plaintiff's claim is time barred under the FHA's two-year statute of limitations. See 42 U.S.C. 3613(a)(1). Plaintiff's loan was taken out on May 22, 2007, but this action was not filed until June 8, 2009. However, Plaintiff argues to the Court that, because he could not read the documents he signed (indeed, this is the gravamen of the entire action), he was not aware that he had a cause of action until he July of 2007, when he made is first, allegedly inflated, mortgage payment. Because this action was filed within two years of Plaintiff's discovery of defendants' alleged wrongdoing, the action is timely. As to First Security, therefore, the motion to dismiss is DENIED.

7.   <u>Violation of the Equal Credit Opportunity Act</u>

Plaintiff also alleges a violation of the Equal Credit Opportunity Act, which provides that "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction[,] . . . on the basis of race, color, religion, national origin, sex or marital status, or age . . . ." 15 U.S.C. § 1691.

As explained above in the context of the Fair Housing Act, Plaintiff has failed to allege facts supporting discrimination with regard to national origin as to defendants American Mortgage Network and JPMorgan Chase. Therefore, those defendants' motions to dismiss must be granted. Plaintiff is granted leave to amend.

Defendant First Security argues that it is protected by the statute of limitations. However, for the reasons explained above with the FHA claim, this Court concludes that this cause of action is not time barred. The motion to dismiss this claim as to First Security is therefore DENIED.

8.    Declaratory Relief

Plaintiff also asserts a so-called declaratory relief action, "seek[ing] to unwind a series of transactions, beginning with the First Security Loans, and the resultant security interest to AMN and/or Vertice and/or Wachovia and/or Wells Fargo and to Luminent, which currently encumber the property." Compl. ¶ 56. Further, "Plaintiff desires a judicial determination of the rights and duties of the parties. A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain the rights and duties of the parties involved in, or benefiting from, the unlawful and fraudulent transactions set forth in this Complaint." Id. ¶ 62.

In other words, Plaintiff seeks extraordinarily broad injunctive relief in the guise of a judicial "declaration." However, Plaintiff provides no legal basis for this extraordinary form of relief. Indeed, some causes of action asserted against some defendants provide for the rescission of a contract, but there is simply no authority for the proposition that this Court could order a non-party – the original lender – to re-extend a loan that was paid off years ago. This is doubly complicated by the fact that the original lender is now, according to Plaintiff, defunct.

Plaintiff seems to recognize these legal infirmities. In his opposition papers, he recognizes that he "was required to incorporate a separate cause of action for declaratory relief" because certain "Defendants are not real estate brokers, and therefore, could not be subject to the Civil Code § 1632 requirement to provide Plaintiff with a translation of the key loan terms." However, an action for declaratory relief is not a vehicle whereby a Plaintiff can impose liability on a party even though the statute in question by its terms does not reach that party.

The Declaratory Judgment act is procedural only. <u>Aetna Life Ins. Co. of Hartford v. Haworth</u>, 300 U.S. 227, 240 (1937). It permits a court to "declare the rights and legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. Plaintiff, however, is in actuality asking this court to make various and sweeping injunctive decrees. Such relief is improper under the statute. This claim is therefore dismissed. This claim may be amended so long as Plaintiff truly seeks a judicial declaration, as opposed to broad injunctive relief.

**IT IS SO ORDERED.**

Dated: February 5, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE