**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO HERNANDEZ,<br><br>    Plaintiff,<br><br>v.<br><br>SUTTER WEST CAPITAL et al.,<br><br>    Defendants. | No. C 09-3658 CRB<br><br>**ORDER GRANTING MOTIONS TO DISMISS WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART** |

    Antonio Hernandez brings this action seeking rescission of a series of refinancing loans and monetary damages arising out of said loans. Hernandez alleges various wrongdoings on the part of all parties involved in the transactions. Defendants Chase and American Mortgage Network ("AMN") move to dismiss the claims brought against them. For the reasons that follow, these motions are GRANTED.

### BACKGROUND

    This case comes before this Court on a motion to dismiss. The following recitation of facts is therefore taken entirely from the allegations in the First Amended Complaint ("FAC").

    Plaintiff Hernandez "cannot read in English, and has only basic limited capacity in spoken English. However, he speaks Spanish fluently and can read in that language." FAC ¶ 21. Plaintiff purchased a home on June 25, 2004, "financed by a loan obtained through Saxon Mortgage and funded by First Franklin Financial Corporation." Id. ¶ 22. The principal of the loan was $585,000, with a variable interest rate beginning at 6.25%. Id.

Later, on the advice of friends, Plaintiff consulted with Sutter West Capital Mortgage to determine if it would be wise to refinance. Id. ¶ 23. "At all times, the Sutter West Defendants, through the Spanish-speaking agents and employees among these Defendants, communicated with Plaintiff in Spanish." Id. Sutter West told Plaintiff that they could obtain a loan for him with better terms, and "Plaintiff retained the Sutter West Defendants for this purpose." Id. During the process of refinancing, however, "[t]he Sutter West Defendants did not translate any of the material terms, or any terms, of the new loans into English for Plaintiff before, during, or after, execution of the documents effectuating the refinance. Plaintiff did not sign or receive any documentation in Spanish related to the loans he obtained through the Sutter West Defendants." Id. ¶ 24.

Plaintiff succeeded in refinancing his loan on June 22, 2006, obtaining two loans financed by Chase. Id. ¶ 25. The first loan had a principle of $572,000 with an initial interest rate of 6.5% and a 12.5% ceiling. Id. ¶ 26. Plaintiff also received an additional loan of $28,000 with a fixed interest rate of 7.5%. Id. ¶ 27. According to Plaintiff, the terms of this loan were worse than the terms of his original loan. Id. ¶ 28. According to the Complaint, "the Sutter West Defendants did not advice [him] of the principle sums on the Sutter West Loans, nor that his loan liability was now higher than on the Original Loan," nor did they inform him that his new monthly payments would be "nearly $300 a month" higher. Id. ¶ 29. Further, Plaintiff alleges that the Sutter West Defendants did not inform him that if he waited three days to refinance, he would have avoided a $15,000 prepayment penalty on the original loan. Id. ¶ 30.

Plaintiff sought to refinance again in 2007 with First Security Financial Group. Id. ¶ 35. Again, he sought more favorable terms, and also sought to combine his two loans into one. Id. He alleges that the First Security Defendants informed him that they would consolidate the loans into one single loan, and that the terms would be better than those of the Sutter West loan. Again, he alleges that the First Security Defendants failed to provide him with a Spanish translation of the loan documents, which ultimately failed both to provide better terms and to consolidate the loans.

The loans he was ultimately given were financed by American Mortgage Network Defendants. The first loan had a principle of $541,600 with an initial variable interest rate of 6.35% and a cap of 12.375%. Id. ¶ 38. The principle for the second loan was $78,400 with a fixed interest

2

1  rate of 8.75%. Id. ¶ 39. "The secured principle of the two loans totaled $620,000, following close
2  of escrow. Thus, following three years of timely, monthly mortgage payments, Plaintiff's debt
3  increased by approximately $35,000 over the Original Loan." Id. Moreover, "the First Security
4  Defendants did not inform Plaintiff that his monthly mortgage payments would go up by nearly
5  $190 a month." Id. ¶ 41. "It was not until Plaintiff received a telephone call from the lender
6  indicating his payments on First Security Loan #2 were overdue that he became aware of the
7  existence of that loan." Id. ¶ 42.

8  Plaintiff brings a series of actions against the moving defendants, Chase and American
9  Mortgage Network. These defendants seek to dismiss the following claims: (1) violation of the
10 California Translation Act, Civil Code § 1632; (2) violation of the Unruh Civil Rights Act, Civil
11 Code § 51; (3) violation of the Fair Housing Act; and (4) violation of the Equal Credit Opportunity
12 Act.

**Discussion**

1.   Legal Standard

Under Rule 12(b)(6), a party may move to dismiss a cause of action which fails to state a claim upon which relief can be granted. On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Wyler-Summit Partnership v. Turner Broadcasting System, Inc., 135 F.3d 658, 661 (9th Cir. 1998). To survive a Rule 12(b)(6) motion to dismiss, the complaint must state a claim to relief that is "plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A claim has "facial plausibility" when the pleaded factual allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Despite the requirement that factual allegations in the complaint be taken as true, a legal conclusion "couched as a factual allegation" need not be accepted. Id.

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleadings was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).

3

1  In determining whether amendment would be futile, the court examines whether the complaint could
2  be amended to cure the defect "without contradicting any of [the] original complaint." Reddy v.
3  Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted.
4  Id. at 296-97.

5  2.   Violation of the California Translation Act § 1632

6       a. *Chase*

7  Plaintiff asserts a cause of action against Defendants JPMorgan Chase Bank, N.A., and
8  Chase Home Finance LLC (collectively referred to as "Chase") under Cal. Civ. Code § 1632(k) for
9  rescission of the Sutter West Loan because the mortgage broker for the Sutter West Loan did not
10 provide Plaintiff with a written translation from English into Spanish of the documents related to the
11 loan. FAC ¶ 58. The California Translation Act provides that "[a]ny person engaged in a trade or
12 business who negotiates primarily in Spanish . . . orally or in writing, in the course of entering into a
13 [loan or extension of credit], shall deliver to the other party to the contract or agreement and prior to
14 the execution thereof, a translation of the contract or agreement in the language in which the contract
15 or agreement was negotiated . . . ." Cal. Civ. Code §1632(b). It further provides that "[u]pon failure
16 to comply with the provisions of this section, the person aggrieved may rescind the contract . . . ."
17 Cal Civ. Code § 1632(k). Rescission requires that the borrower tender to the lender any money or
18 property received from the lender to complete the rescission. Yamamoto v. Bank of N.Y., 329 F.3d
19 1167, 1173 (9th Cir. 2003).

20 Chase argues that Plaintiff's claim must fail because there is nothing for Plaintiff to rescind:
21 the Sutter West Loan has been superceded by the First Security Loan and the Property reconveyed.
22 Chase cites King v. State of Cal., 784 F.2d 910, 913 (9th Cir. 1986), which states that if a deed of
23 trust executed in connection with a loan has been superseded and the property has been reconveyed,
24 a plaintiff cannot maintain an action for rescission. No rescission claim lies because there is nothing
25 to rescind. Id.

26 Plaintiff counters Chase by arguing that King addressed the Truth in Lending Act (TILA),
27 not the California Translation Act. Plaintiff's reading of King is too narrow: the court's holding
28 applies to rescission generally, not just rescission under TILA. Id. Indeed, it is hard to envision

4

what "rescission" in this context would look like.  If the current loan were rescinded, Hernandez would regain the deed, and the current lenders would be given the remainder of the funds extended to Plaintiff.  At that point, Chase has no dog in the fight, and there would be nothing to rescind.  Plaintiff suggests that he would be entitled to a court order unwinding the previous two loans.  Even if that extraordinary claim were true, such an order would not be an order of rescission.

Plaintiff further argues that there is in fact something to rescind, namely the down payment, finance charges, commissions, and fees paid in connection with the Sutter West Loan. Plaintiff's argument is not persuasive and finds no support in the language of Cal. Civ. Code § 1632(k).  The black and white language of § 1632(k) provides that a party may rescind the *contract* or *agreement.* It says nothing with respect to fees associated with procuring said contract or agreement.  As Chase correctly points out, it no longer has any interest in the Property, and Plaintiff has failed to cite any authority that would permit him to "unwind" the train of loans back to the superceded Sutter West Loan.  Therefore, there is nothing left for Plaintiff to rescind.

Because Plaintiff's claim for rescission fails as a matter of law, so too must his claim for restitution.  Cal. Civ. Code § 1632(k) provides in relevant part: "When the contract for a consumer credit sale or consumer lease which has been sold and assigned to a financial institution is *rescinded* pursuant to this subdivision, the consumer shall make *restitution* . . . ." (emphasis added).  Thus, restitution is ancillary to rescission.  Absent a cognizable claim for rescission, no claim for restitution may lie.

The Sutter West Loan has been superceded by the First Security Loan and the Property reconveyed.  Therefore, the motion to dismiss this action is GRANTED with prejudice.

b. *American Mortgage Network*

Plaintiff asserts a cause of action under this section against Defendant American Mortgage Network ("AMN") for rescission of the First Security Loan based on the allegation that the mortgage broker for the First Security Loan did not provide Plaintiff with a written translation from English into Spanish of the documents related to the loan.  FAC ¶ 51.

Plaintiff concedes in his reply memorandum that AMN is listed as a defendant under this cause of action for the sole purpose of providing AMN with notice of the rescission of the loan.

5

1  However, lawsuits are typically not brought for the purpose of giving a concerned party "notice."
2  This is not a legal cause of action as Plaintiff does not allege any wrongdoing in the negotiations on
3  behalf on AMN. In fact, according to the complaint, AMN did not participate in the negotiations. In
4  any event, AMN now has notice of the existence of this suit. Therefore, the motion to dismiss this
5  action is GRANTED with prejudice.

6  3.   <u>Violation of the Unruh Civil Rights Act</u>

Plaintiff asserts a cause of action under this section against both AMN and Chase (collectively referred to as "Defendants"). "The Unruh Civil Rights Act guarantees to all persons within the jurisdiction of California, no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition, the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." <u>Koebke v. Bernardo Heights Country Club</u>, 116 Cal. App. 4th 791, 807 (2004). Plaintiff was given leave to amend his complaint to include factual allegations against Defendants with respect to the allegation that the banks' conduct was racially motivated. The FAC alleges that Defendants (1) reviewed Plaintiff's loan applications; (2) were aware of Plaintiff's loan and payment history; (3) assessed the terms of the proposed loans; (4) were aware that Plaintiff did not know the true terms and conditions of the subject loans; and (5) extended credit on terms that were less favorable than the terms offered to other, similarly situated parties because of Plaintiff's race. FAC ¶¶ 95-99.

AMN and Chase make similar arguments in support of their motions to dismiss this claim, namely that Plaintiff failed to include the necessary factual support in the FAC for the claim that Defendants intentionally discriminated against Plaintiff. The FAC fails even to allege that Defendants were aware of Plaintiff's race. Defendants funded the loan, but the FAC does not allege that any representative of either Defendant met Plaintiff, nor that they were informed of his race.

According to Plaintiff, it is sufficient that the FAC contains the allegation that Defendants had "direct knowledge" of the fact that the terms of the Loans denied full and equal advantages, privileges, or services to Plaintiff, and that Defendants were aware or should have been aware that Plaintiff did not know the true terms of the Loans. The "injury" Plaintiff complains of is that the banks extended credit on unreasonable or unfair terms because the interest rates were higher than

6

those applicable to the Original Loan. See FAC ¶¶ 26, 95.[1]  These facts on their own do not support a claim for discrimination. The fact that the interest rates of the Sutter West Loan were *slightly* higher than the rates on the Original Loan could be attributed to natural market forces or myriad other non-discriminatory factors. Indeed, Plaintiff makes no factual allegation that similarly situated plaintiffs were receiving better interest rates at that time. Moreover, Plaintiff's argument seems to ignore the fact that the interest rate on the First Security Loan, which superceded the Sutter West Loan, is actually *lower* than the interest rate on the Sutter West Loan. Even if it were higher, such a change does not imply any discriminatory practice. The relevant question is whether others were given more advantageous terms *at the same time*, not whether Plaintiff's earlier deals were better than his later ones.[2]  While the complaint currently contains conclusory assertions that others were indeed treated better, there are no facts to support this conclusion. In a second amended complaint, Plaintiff must allege such facts.

Plaintiff's argument fails to take into account that his complaint must state a claim to relief that is "plausible on its face." Iqbal, 129 S.Ct. at 1940 (2009). Conclusory allegations that merely outline the elements of a cause of action are insufficient to state a claim. Twombly, 550 U.S. at 555. The FAC here does no more with regard to Defendants than provide just such an outline, and the "injury" complained of—higher interest rates—has not yet been plausibly connected to Plaintiff's race. Therefore, the motion to dismiss this claim is GRANTED with leave to amend.

4.      Violation of the Fair Housing Act

---

[1] 1. The Original Loan had a principle of $585,000. FAC ¶ 22. The variable interest rate started at 6.25%, with a 12.375% cap. Id.  The Sutter West Loan had a principle of $572,00. Id. ¶ 26. The variable interest rate started at 6.5%, with a 12.5% cap. Id.  The First Security Loan had a principle of $541,000. Id. ¶ 38. The variable interest rate started at 6.35%, with a 12.375% cap. Id.

[2] 2. Plaintiff faces a different hurdle with regard to allegations that the banks' discriminatory action is demonstrated by the fact that Plaintiff was lent ever higher sums of money. As it is currently drafted, the FAC alleges that the brokers fraudulently convinced Plaintiff to take out larger loans, and that the banks funded those loans. That is to say, the complaint alleges that the banks loaned the amount of money that Plaintiff, through his broker, requested. It is hard to see how the banks discriminated against Plaintiff by doing what he asked. Did the bank typically inform non-protected individuals that it was unwise to increase their debt burden in such a case? Should it have refused to process the loan on those grounds? Typically, a claim of discrimination would assert the opposite: that the banks failed to loan to a protected individual, while loaning to similarly situated non-protected individuals. Plaintiff must allege further facts showing how the banks, as opposed to the brokers who convinced Plaintiff to take a bad deal, discriminated against him.

7

Plaintiff asserts a cause of action under this section, alleging that (1) Defendants AMN and Chase reviewed and assessed Plaintiff's loan applications and were aware of Plaintiff's loan and payment history; (2) Defendants extended credit on these terms and received a greater economic benefit from the presence of discriminatory terms in the loans; (3) Defendants had direct knowledge of the fact that the terms of the loans provided to Plaintiff were made on grossly unfavorable terms, as they reviewed, approved and/or dictated all or some of those terms; and (4) Defendants' lending practices have a disparate impact on Plaintiff because Defendants provide similarly situated loan applicants with significantly more favorable terms. FAC ¶¶ 152-55. The FHA makes it unlawful "for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color religion, national origin, sex or marital status, or age." 42 U.S.C. § 3605.

As with Plaintiff's Unruh Act claims, Plaintiff fails to provide any facts regarding how these parties discriminated against Plaintiff. Defendants were not involved in the negotiations to obtain the loan, Defendants did not deceive Plaintiff as to the loan he was receiving, there is no allegation that Defendants were aware of Plaintiff's national origin, and Plaintiff has not alleged that any agency relationship exists between the brokers and the banks. Therefore, the motion to dismiss this claim is GRANTED with leave to amend the complaint.

5.  <u>Violation of the Equal Credit Opportunity Act</u>

Plaintiff asserts a cause of action under this section, alleging that Defendants AMN and Chase acted with discriminatory intent with respect to the mortgage loans, or, in the alternative, that Defendants are vicariously liable for such acts on the part of their agents and/or employees. FAC ¶ 160. The Equal Credit Opportunity Act (ECOA) provides that "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction[,]. . . on the basis of race, color, religion, national origin, sex or martial status, or age . . . ." 15 U.S.C. § 1691.

As explained above in the context of the Unruh Act and the Fair Housing Act, Plaintiff has failed to allege facts supporting the conclusory allegation of discrimination on the part of Defendants

8

with respect to Plaintiff's national origin. Therefore, the motion to dismiss this claim is GRANTED with leave to amend the complaint.

### Conclusion

For the reasons stated above, Defendants' motions as to the California Translation Act are GRANTED with prejudice, and the motions as to the remaining claims are GRANTED with leave to amend. A second amended complaint must be filed by June 24, 2010.

**IT IS SO ORDERED.**

Dated: June 10, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE