IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO HERNANDEZ,<br><br>    Plaintiff,<br><br>  v.<br><br>SUTTER WEST CAPITAL, et al.<br><br>    Defendants. | No. C 09-03658 CRB<br><br>**ORDER GRANTING DEFENDANT J.P. MORGAN AND CHASE BANK'S MOTION TO DISMISS AND DENYING DEFENDANT AMERICAN MORTGAGE NETWORK'S MOTION TO DISMISS** |

Presently before the Court are two Motions to Dismiss the Second Amended Complaint ("SAC"). One was filed by Defendants JPMorgan Chase, N.A. and Chase Home Finance LLC (collectively "JPMorgan") and the other was filed by American Mortgage Network ("AMN"). For the reasons that follow, JPMorgan's Motion to Dismiss is **GRANTED with prejudice** and AMN's Motion to Dismiss is **DENIED**.

## I.  BACKGROUND

Because this matter comes before the Court on a motion to dismiss, the following recitation of facts is taken entirely from the allegations in the SAC.

Plaintiff Hernandez is of Hispanic origin and "cannot read in English, and has only basic limited capacity in spoken English. However, he speaks Spanish fluently and can read in that language." SAC ¶ 21. Plaintiff purchased the property in question on June 25, 2004, "financed by a loan obtained through Saxon Mortgage and funded by First Franklin Financial

1  Corporation[.]" Id. ¶ 23. The loan's principal was $585,000 with a variable interest rate
2  beginning at 6.25%. Id. There was a prepayment penalty period of 24 months. Id.

3  Later, on the advice of friends, Plaintiff consulted with the Sutter West Defendants
4  (not involved in these Motions) to determine if it would be wise to refinance. Id. ¶ 24. "At
5  all times, the Sutter West Defendants, through the Spanish-speaking agents and employees
6  among these Defendants, communicated with Plaintiff in Spanish." Id. Sutter West told
7  Plaintiff that they could obtain a loan for him with better terms, and "Plaintiff retained the
8  Sutter West Defendants for this purpose." Id. During the process of refinancing, however,
9  "[t]he Sutter West Defendants did not translate any of the material terms, or any terms, of the
10 new loans into [Spanish] for Plaintiff before, during, or after, execution of the documents
11 effectuating the refinance. Plaintiff did not sign or receive any documentation in Spanish
12 related to the loans he obtained through the Sutter West Defendants." Id. ¶ 25.

13 Plaintiff succeeded in refinancing his loan on June 22, 2006, obtaining two loans
14 financed by JPMorgan. Id. ¶ 26. The first loan had a principle of $572,000 with an initial
15 interest rate of 6.5% and a 12.5% ceiling. Id. ¶ 27. Plaintiff also received an additional loan
16 of $28,000 with a fixed interest rate of 7.5%. Id. ¶ 28. The terms of these loans were worse
17 than the terms of his original loan. Id. ¶ 29. Further, Plaintiff alleges that the Sutter West
18 Defendants did not inform him that, if he waited three days to refinance, he would have
19 avoided a $15,000 prepayment penalty on the original loan. Id. ¶ 31.

20 Plaintiff sought to refinance again in 2007 with First Security Financial Group (not
21 involved in these Motions). Id. ¶ 36. He once again sought more favorable terms and also to
22 combine his two loans into one. Id. He alleges that the First Security Defendants informed
23 him that they would consolidate the loans into one single loan and that the terms would be
24 better than those of the Sutter West loans. Id. ¶ 37. He alleges that the First Security
25 Defendants failed to provide him with a Spanish translation of the loan documents, which
26 ultimately failed both to provide better terms and to consolidate the loans. Id. ¶¶ 38-42.

27 Plaintiff also sets forth a series of allegations related to Defendants JPMorgan and
28 AMN.

1  •  They incentivized brokers to originate loans that were less favorable to the
2     borrower. Id. ¶ 50.
3  •  They subjected Hispanic borrowers to company policies that resulted in them
4     paying more for their loans than similarly situated Caucasian borrowers. Id. ¶
5     51.
6  •  These policies were facially neutral but had a disproportionally adverse effect
7     on Hispanics. Id. ¶¶ 52-53, 57-58.
8  •  These adverse effects have been confirmed by statistical analysis. Id. ¶ 54.
9  •  "Plaintiff was actually harmed by the acts . . . in that Plaintiff obtained a loan
10    that was less favorable to him than the loans Defendants . . . were providing to
11    equally-situated Caucasian borrowers during the same timeframe." Id. ¶ 111.

## II. STANDARD OF REVIEW

Under Rule 12(b)(6), a party may move to dismiss a cause of action which fails to state a claim upon which relief can be granted. On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Wyler-Summit Partnership v. Turner Broadcasting System, Inc., 135 F.3d 658, 661 (9th Cir. 1998). To survive a Rule 12(b)(6) motion, the complaint must state a claim to relief that is "plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A claim has "facial plausibility" when the pleaded factual allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

A defendant is permitted to raise a statute of limitations argument in a 12(b)(6) motion provided the basis for the argument appears on the face of the complaint and any materials the court is permitted to take judicial notice of. See Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir.1980).

//
//
//
//

3

## III. DISCUSSION

### A. The Claims Against JPMorgan Are Dismissed on Statute of Limitations Grounds[1]

#### 1. All of Plaintiff's Claims Carry a Two-Year Statute of Limitations

##### a. The FHA and the ECOA Carry a Two-Year Limitations Period By Their Express Terms

Claims under the FHA and the ECOA must be brought within two years of the date of "the occurrence of the violation" (in the case of the ECOA) and within two years of "the occurrence or the termination of an alleged discriminatory housing practice" (in the case of the FHA). 15 U.S.C. § 1691e(f); 42 U.S.C. § 3613(a).

##### b. The Unruh Act Claim Carries a Two-Year Limitations Period

The Unruh Civil Rights Act does not contain an express statute of limitations. This has been and continues to be a source of some confusion for litigants and courts. The current approach to decide the applicable statute of limitations is for the Court to determine whether the underlying claim (discriminatory lending practices) is statutory or derived from the common law. If the former, then California's three-year limitations period for statutory claims applies. If the latter, then California's two-year limitations period for personal injury claims applies. Kemp v. Regents of Univ. of Cal., No. C-09-4687 PJH, 2010 WL 2889224, at *6 (N.D. Cal. July 22, 2010) (discussing uncertainty in calculating the statute of limitations in Unruh Act claims). The Court concludes that, although it is still a somewhat open question, the two-year limitations period for personal injury actions should apply in this case. Prawoto v. PrimeLending, – F. Supp. –, 2010 WL 2593610, at *7 (C.D. Cal. 2010) (concluding that an allegation of discrimination "in setting the terms and conditions of [a] mortgage agreement" is subject to the limitations period for personal injury actions).

---

[1] Plaintiff did not respond in writing to any of JPMorgan's statute of limitations arguments. He did, however, respond to similar arguments raised in JPMorgan's Motion to Dismiss the First Amended Complaint. At the hearing on the instant Motion counsel expressed a desire to rely upon the previously submitted papers. By far the better course would have been for Plaintiff to have responded in writing to all of the arguments raised by JPMorgan's instant motion or at least to have expressly incorporated any arguments previously made. Nevertheless, in ruling on the current Motion the Court has considered Plaintiff's original statute of limitations arguments.

4

### 2. The Statute of Limitations Began to Run When the JPMorgan Refinance Was Completed or, at the Latest, from the Point at Which Plaintiff Refinanced and Extinguished the JPMorgan Loans

Plaintiff refinanced his home loan with JPMorgan on June 22, 2006, and the deed of trust was filed on June 28, 2006.[2] The conduct giving rise to Plaintiff's FHA, ECOA, and Unruh Act claims – the issuance of the unfavorable, discriminatory loans – therefore took place in June 2006. See Goodwin v. Executive Trustee Serv., LLC, 680 F. Supp. 2d 1244, 1251 (D. Nev. 2010); Omoregie v. Boardwalk Auto Care Ctr., Inc., No. C 07-3884 PJH, 2008 WL 3823697 (N.D. Cal. Aug. 13, 2008). Plaintiff did not file this lawsuit until June 9, 2009, and it is thus time barred.

Nor, for two reasons, can Plaintiff escape application of the applicable statutes of limitation under a "continuing violation" theory based on his receipt and payment of mortgage statements. First, the allegedly wrongful act was the issuance of the JPMorgan loans. That conduct simply did not occur again or otherwise continue, and the payments Plaintiff made pursuant to the loans were effects of any violation, not new violations in their own right. Goodwin, 680 F. Supp. at 1251; Davenport v. Litton Loan Serv., LP, – F. Supp. 2d –, 2010 WL 3218592, at *7 (N.D. Cal. 2010) (noting that a claim that "hones in on the origination and consummation of" a loan does not provide a basis for adoption of a "continuing violation" approach to FHA and ECOA claims); Lyons v. First American Title Ins. Co., No. C 09-4156 PJH, 2009 WL 5195866, at *4 (N.D. Cal. Dec. 22, 2009) ("The fact that plaintiffs continue to pay premiums, based on the single refinancing act, constitutes only a continuing effect [not a continuing violation]."); Cervantes v. Countrywide Home Loans, Inc., No. CV 09-517-PHX-JAT, 2009 WL 3157160, at *7 (D. Ariz. Sept. 24, 2009) ("[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation.") (quoting Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir.1981)); but see Taylor v. Accredited Home Lenders, Inc., 580 F. Supp. 2d 1062, 1066 (S.D. Cal.

---

[2] In assessing JPMorgan's statute of limitations arguments the Court has taken judicial notice of certain publicly recorded documents, copies of which were provided by JPMorgan in a Request for Judicial notice filed with JPMorgan's Motion. Dkt. 100; See MGIC Indem. Corp. v. Weisman, 80. F.2d 500, 504 (9th Cir. 1986). This does not convert the Motion to Dismiss into a motion for summary judgment.

5

2008) ("[E]ach mortgage statement that seeks inflated payments for the loan based upon discriminatory terms is another violation visited upon Plaintiff."). Second, even assuming that each mortgage statement issued under the JPMorgan loans constituted a continuing violation, Plaintiff refinanced and extinguished that loan no later than May 30, 2007 when the deed of trust was recorded on his loan from AMN. Thus, May 30, 2009 was the absolute latest point at which he could have brought a timely suit against JPMorgan even under a continuing violation theory.[3]

Accordingly, the Court grants JPMorgan's Motion to Dismiss with prejudice because Plaintiff's claims as against JPMorgan are untimely.

### B. Plaintiff States a Claim Against AMN Under the Unruh Act, the FHA, and the ECOA

#### 1. The FHA and ECOA Claims

To state a claim for disparate impact discrimination under the FHA or the ECOA a plaintiff must plead (1) the existence of outwardly neutral practices; (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices; and (3) facts demonstrating a causal connection between the specific challenged practice or policy and the alleged disparate impact. Pfaff v. U.S. Dept. of Housing and Urban Dev., 88 F.3d 739, 745 (9th Cir. 1990); Ramirez v. Greenpoint Mortg. Funding, Inc., No. C08-0369 TEH, 2010 WL 2867068, at *13 (N.D. Cal. July 20, 2010); Wards Cove Packing Co. v. Antonio, 490 U.S. 642, 657-58 (1989).

Plaintiff has set forth a disparate impact claim because he has pleaded the existence of outwardly neutral policies and that such policies have had a disparate negative impact on Hispanics generally and him specifically. SAC ¶¶ 161-166. Plaintiff has incorporated into the SAC a study from the Center for Responsible Lending that, taken in the light most favorable to him, found that Hispanics received loans that were worse than those received by

---

[3] Plaintiff has previously argued that even the extinguishment of the JPMorgan loans did not end the continuing violation because the loan he needed to take out to pay off the JPMorgan loans was higher than it otherwise would have been because of JPMorgan's initial misconduct. The Court finds this argument unpersuasive. Taken to its logical conclusion it would mean that a lender could be sued years or even decades after the lender no longer had a security interest in the property and after countless subsequent refinancings.

6

similarly situated Caucasian borrowers. At this stage of the proceeding the Court concludes that the SAC (combined with the study) provides sufficient non-conclusory allegations to make Plaintiff's disparate impact claim plausible on its face.[4] See e.g. Taylor v. Accredited Home Lenders, Inc., 580 F. Supp. 2d 1062, 1068-69 (S.D. Cal. 2008) (denying motion to dismiss where an African-American plaintiff alleged disparate impact and relied on, among other things, a study from the Center for Responsible Lending).

### 2.     The Unruh Act

"[A] Plaintiff seeking to establish a cause of action under the Unruh Act must plead . . . intentional discrimination in public accommodations in violation of the terms of the Act." Harris v. Capital Growth Investors XIV, 805 P.2d 873 (Cal. 1991). Drawing all reasonable inferences in his favor, Plaintiff has met this standard.

Plaintiff alleges that (1) Defendant banks engaged in disparate treatment as a result of (2) facially neutral policies and that (3) Plaintiff obtained a loan that was less favorable than the loans being offered by Defendant banks to equally situated Caucasian borrowers at the same time. Further, reading the SAC in the light most favorable to Plaintiff, he also alleges that, taking into account all other legitimate factors, ethnicity was the reason for the less favorable loans offered to Hispanic borrowers. See SAC ¶ 57-58. See Everett v. Sup. Ct. (Premier Parks, Inc.), 104 Cal. App. 4th 388 (2002). Accordingly, Plaintiff's Unruh Act claim is plausible on its face.

//
//
//
//
//
//
//

---

[4] The Court takes no position on the ultimate admissibility or persuasiveness of the study.

7

## IV. CONCLUSION

For the foregoing reasons (1) JPMorgan's Motion to Dismiss (Dkt. 99) is **GRANTED with prejudice** because Plaintiff's claims against JPMorgan are time barred; and (2) AMN's Motion to Dismiss for failure to state a claim (Dkt. 102) is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 26, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE